Elizabeth M. PURCELL

v.

Marion Stanley KAPELSKI, Appellant,
et al.

No. 18885.

United States Court of Appeals,
Third Circuit.

Argued Oct. 22, 1970.

Submitted on Briefs April 13, 1971.

Decided May 24, 1971.*

As Amended June 29, 1971.

Gerald McLaughlin, Circuit Judge,
dissented and filed opinion.

William S. Zink, Bleakly, Stockwell,
Zink & McGeary, Camden, N. J., for appellant.

Andrew F. Napoli, Cohen, Bellis, Morgan & Verlin, Philadelphia, Pa. (Michael N. Kouvatas, Camden, N. J., on the brief), for plaintiff-appellee.

Argued Oct. 22, 1970

Before McLAUGHLIN, FREEDMAN * and VAN DUSEN, Circuit Judges.

Submitted April 13, 1971

Before McLAUGHLIN, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT
### PER CURIAM:

The question presented by this diversity action for personal injuries arising out of the collision of two automobiles is whether a wife who has obtained a divorce after the accident may sue her former husband for the tort.

The accident occurred on January 21, 1966, in Cherry Hill Township, New Jersey, when an automobile driven by Marion Stanley Kapelski, in which his wife, Elizabeth M. Kapelski, was a passenger, collided with a car driven by Kathleen M. Laphan, in which her sister, Kathryn L. Laphan, was a passenger. At the time Mr. and Mrs. Kapelski were citi-

---

* The majority has not overlooked the decision of the Supreme Court of New Jersey in Darrow v. Hanover Township, 58 N.J. 410, 278 A.2d 200, (filed June 7, 1971). The majority does not believe that Darrow's reasoning applies to the facts of this case. The paramount New Jersey authority relied upon in this case for a determination of the applicable New Jersey law of interspousal disabilities to sue is Sanchez v. Olivarez, 94 N.J.Super. 61, 226 A.2d 752 (1967). Unlike the court in Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970), the Sanchez court did not purport to make a significant change in the common law of New Jersey. Although the decision in Sanchez may be at variance with English common law, the Sanchez court merely purported to apply to a new factual situation the existing common law of New Jersey, common law which was already showing a departure from older English common law. See Sanchez, 226 A.2d at 754.

Judge McLaughlin dissents from the above majority view of the New Jersey Darrow case in which the opinion was filed June 7, 1971.

---

* Judge Freedman only participated in the consideration of this case by the initial panel and died before any disposition was made. The case has been decided by the panel to whom it was submitted on April 13, 1971.

zens of Pennsylvania. They were divorced on September 28, 1967. On November 8, 1967, Mrs. Kapelski instituted this action in the United States District Court for the District of New Jersey against her former husband who had in the meantime become a citizen of California, and the Laphan sisters who were citizens of New Jersey. On April 3, 1969, a year-and-a-half after the suit was begun, plaintiff remarried and is now known as Elizabeth M. Purcell.

Plaintiff claimed that her former husband and Kathleen M. Laphan were negligent and that Kathryn L. Laphan was liable for Kathleen's negligence under the principle of respondeat superior. The Laphan sisters cross-claimed for contribution from Mr. Kapelski and he cross-claimed for contribution from them.

On motion for summary judgment the district court held that a prior New Jersey state court judgment obtained by a passenger in the Kapelski car, who had been injured in the same accident,[1] had adjudicated that Mr. Kapelski was negligent and the Laphan sisters were free of negligence. The district court therefore granted the motion of the Laphan sisters to dismiss Mr. Kapelski's cross-claim. For the same reason it held that Mr. Kapelski's negligence rendered him liable to Mrs. Kapelski (Purcell) and therefore granted summary judgment in her favor, adjudging Mr. Kapelski's liability but leaving Mrs. Kapelski's (Purcell's) damages to be assessed. The district court also denied Mr. Kapelski's motion to dismiss the plaintiff's action as barred by spousal immunity, and certified under 28 U.S.C. § 1292(b) that the order denying such motion involved a controlling question of law as to which there was substantial ground for difference of opinion and that an immediate appeal from the order might materially advance the ultimate termination of the litigation. We then entered an order under Rule 5 of the Federal Rules of Appellate Procedure granting Mr. Kapelski leave to appeal.

■ In this diversity action the district court sitting in New Jersey was required to apply the law which the New Jersey state courts would apply. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The problem posed is, therefore, the determination of which state's law New Jersey would apply in these circumstances and a construction of that applicable law.

■ Inter-spousal immunity in New Jersey was entwined in the related sources of the common law and early statutes.[2] The immunity was read as a prohibition embedded within the fabric of the common law and hence subject to the capacity for development and change characteristic of the common law.[3] There came about a gradual loosening of this hybrid common-law-statutory restriction, and the right to sue was recognized in an expanded area. In 1961 the Supreme Court of New Jersey held that the disability only immunizes the spouse from suit and the immunity therefore ends with a spouse's death, and that accordingly a widow could maintain a suit against her deceased husband's estate for his negligence committed during coverture.[4] Later, in 1967, the New Jersey courts held that they would "accept the reality of the termination of marriage by divorce as being equivalent as

---

1. Mary Raubert v. Marion Stanley Kapelski, Elizabeth M. Kapelski, Kathleen Laphan and Kathryn Laphan, Superior Court of New Jersey, Law Division, Camden County, Docket No. L–9655–66.

2. N.J.S.A. 37:2–5 provides:
   "Nothing in this chapter contained shall enable a husband or wife to contract with or sue each other, except

as heretofore, and except as authorized by this chapter."

3. See Long v. Landy, 35 N.J. 44, 171 A.2d 1, 4 (1961); Kennedy v. Camp, 14 N.J. 390, 102 A.2d 595 (1954).

4. Long v. Landy, 35 N.J. 44, 171 A.2d 1 (1961), approving Johnson v. Peoples First National Bank and Trust Company, 394 Pa. 116, 145 A.2d 716 (1958).

termination by death," and that in "either case, termination of marriage removes the interdiction against inter-spousal litigation." [5]

This gradually unfolding expansion of the right to sue has culminated in Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970), in which the court substantially overruled Koplik v. C. P. Trucking Corp., 27 N.J. 1, 141 A.2d 34 (1958), and held that the marriage of a plaintiff and defendant did not bar the maintenance of the suit already pending between them for a tort committed prior to the marriage. The facts in *Immer*, of course, differ from those of the present case. But there, and in the companion case of France v. A. P. A. Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970), which dealt with the common law immunity of parent and child from suits against each other, the Supreme Court of New Jersey undertook to declare the law of the future in that state in regard to automobile torts involving inter-spousal and parent-child immunity on the basis of its public policy. The *Immer* court was not content with the prior limited exceptions on immunity which had been created by the New Jersey decisions where the circumstances were such that the relationship giving rise to the immunity no longer existed, as in the case of the death of a spouse or child. Going beyond the facts of the case before it, the court announced that in all automobile negligence actions inter-spousal immunity no longer existed.

The court reasoned that automobile liability insurance made it artificial to maintain inter-spousal immunity on the theory of disruption of the domestic felicity, and that the other justification advanced in more recent times, that the rule was required to protect insurance carriers against fraud and collusion, would not withstand New Jersey's successful experience in permitting actions by guests against their hosts, an area where equal danger of collusion existed.[6]

After carefully considering the history of the rationale underlying inter-spousal immunity, and its gradual erosion in the New Jersey courts, the highest court of New Jersey made it clear that as a matter of public policy it would not permit one who has been injured by the negligence of another in the operation of an automobile to be barred from obtaining redress on the ground that, when recovery in tort is sought, the parties are married or had been previously married.

As noted above, prior to *Immer* and *France*, the New Jersey courts in Sanchez v. Olivarez, 94 N.J.Super. 61, 266 A.2d 752 (1967), had recognized the right of spouses to sue each other after divorce, which is the situation presented by this record. That decision would go far in establishing the law of New Jersey that would govern in this case, assuming that New Jersey state courts would apply New Jersey law. But *Immer* and *France* represent far more fundamental changes in the view of the New

---

5. Sanchez v. Olivarez, 94 N.J.Super. 61, 226 A.2d 752 (1967).

6. The court in *Immer* stated that:
"* * * we do not believe that the possibility of fraud should any longer be deemed sufficient to bar all inter-spousal tort claims without at least an opportunity to determine whether our courts can deal adequately with the problem. And the experience of other states which have abandoned the immunity (see Balts v. Balts, 273 Minn. 419, 430, 142 N.W.2d 66, 73 (1966)) and of our own state with the host-guest relationship tends to indicate that the problems can be dealt with. It is, after all, the busi-

ness of our courts to deal with such problems and we ought not assume the task is too onerous without some basis in experience for the assumption. If for some unexpected reason our faith in the ability of judges and juries to weed out fraudulent claims in particular cases proves wrong, our courts are free to re-adopt the immunity doctrine. That is the nature of the common law. Or the Legislature may act. But we ought not continue to maintain a doctrine for fear of an unhappy consequence when what knowledge we have tells us that our fear may not be justified." 56 N.J. at 493–494, 267 A.2d at 487.

Jersey courts toward inter-spousal immunity, and reveal far more clearly than *Sanchez* the public policy of New Jersey in this area. The broad scope of the new rules announced in *Immer* and *France* also reflects the strength of the New Jersey public policy in this area, which strength indicates that the New Jersey courts would be likely to apply this policy to any actions brought in the courts of that state in situations similar to those presented by this record.

We need not, however, rest our conclusion exclusively on our view of the strength of the New Jersey policy, and our resulting view that the New Jersey courts would likely apply their own policy in an action brought in New Jersey by foreign domiciliaries, for New Jersey has a variety of other interests at stake in cases like this. New Jersey has an interest as the situs of the accident in whatever restraining effect upon potentially negligent drivers it may attribute to an unrestricted right of action by persons injured, even though they be spouses, by the negligence of others on New Jersey's highways. Also, New Jersey has an interest in protecting any New Jersey doctors and hospitals who may have extended treatment to the plaintiff following the accident, and who may have to look to plaintiff's recovery for their remuneration. In addition, had the Laphan sisters not already been adjudicated free from negligence, New Jersey would have an interest in protecting their right of contribution since they are its citizens, a right which would be jeopardized if the defendant spouse's motion to dismiss the main action were granted.

We believe that a New Jersey state court would apply the law of New Jersey in this case on the facts in this record.[7]

For the foregoing reasons, we will affirm that part of the February 26, 1970, district court order, filed March 3, 1970, denying the motion of defendant, Marion Stanley Kapelski, to dismiss the complaint as to him.[8]

7. We emphasize that this record presents an unusual set of facts. In Koplik v. C. P. Trucking Corp., 27 N.J. 1, 141 A.2d 34 (1958), the Supreme Court of New Jersey followed the lead of Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955), and adopted the rule that "disabilities to sue and immunities from suit arising from the family relationship [will be] determined by reference to the law of the state of the family domicile when the suit is brought in that state." 27 N.J. at 11–12, 141 A.2d at 40. This part of *Koplik* appears to have survived the decisions in Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970), and France v. A. P. A. Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970). Assuming that the New Jersey courts would apply this rule to suits brought in New Jersey when New Jersey is not the domiciliary state, we do not believe that this rule is applicable to the facts of this case. First, at the time this suit was brought, there existed no "family relationship" which would call for application of the rule. Second, at the time this suit was brought Mrs. Kapelski (Purcell) was domiciled in Pennsylvania, and Mr. Kapelski was domiciled in California. There are, therefore, different domiciles with different rules, assuming Pennsylvania retains inter-spousal immunity, since California has abandoned the doctrine of inter-spousal immunity. *See* Klein v. Klein, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962). Thus the *Emery-Koplik* rule, which is designed to further the policies and interests of domiciliary states, is inapplicable to the facts presented by this record. *Compare* the proposed draft of Restatement (Second) of Conflicts of Laws §§ 169, 145 (Proposed Official Draft, Part II, 1968) *and* Restatement (Second) of Conflicts of Laws §§ 169, 145 (1971) *with* the proposed draft of Restatement (Second) of Conflicts of Laws § 390g & comment b & illustration 6, § 379 (Tent.Draft No. 9, 1964).

8. The district court order provides in part, in accordance with 28 U.S.C. § 1292 (b),

"That part of this Order denying the motion of defendant, Marion Stanley Kapelski, to dismiss the complaint as to him, involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from that part of this Order may materially advance the ultimate termination of the litigation."

and it is that part of such order which is challenged by this appeal.

**384**

GERALD McLAUGHLIN, Circuit Judge (dissenting).

This appeal arises out of a collision between two automobiles on January 21, 1966 at the intersection of Munn Avenue and Kings Highway, East, Cherry Hill Township, Camden County, New Jersey. Plaintiff-appellee was the owner of one of the automobiles in which she was riding at the time. Her then husband, defendant-appellant Kapelski, was operating the car. Plaintiff, now Mrs. Purcell, in her complaint alleges that at the time and place of the accident she was a passenger in her automobile which her husband was driving. She claims that the collision was caused by reason of the negligence of her husband and the driver of the other machine. She asserts that she suffered serious personal injury from the said collision. In his answer defendant Kapelski alleges that plaintiff was guilty of negligence and contributory negligence. He denies each and every affirmative allegation of the complaint which would include the allegation that plaintiff was a passenger in her automobile at the time of the accident. In a separate defense the answer states that plaintiff's alleged injuries and/or damages were caused by the sole negligence of the owner and driver of the other automobile involved.

Appellant Kapelski filed a motion in the district court to dismiss the complaint against him on the ground that Pennsylvania law governed as to whether plaintiff had the right to sue the person who was her husband at the time of said accident on the theory that it was his negligence which caused her injury. The motion was denied by the district court. That decision is the sole basis of the appeal here which is on behalf of defendant-appellant Kapelski. The latter and plaintiff-appellee, the now Mrs. Purcell, when the accident occurred were husband and wife and domiciled in the Commonwealth of Pennsylvania. They were later divorced. The wife remarried and continued to reside in Pennsylvania; defendant-appellant became a California resident.

It is not disputed that at the time of the accident, the Kapelski automobile was a Pennsylvania licensed car with its Pennsylvania owner and her husband, a citizen of Pennsylvania, therein. Under the law of that state then and now such a hard nosed claim as is presented on this appeal would not be allowed, Meisel v. Little, 407 Pa. 546, 180 A.2d 772. Chromy v. Chromy, 10 Pa.Dist. & Co. R.2d 791, 20 Fay.L.J. 52 (1958); Ellis v. Brenninger, 71 Pa.Dist. & Co.R. 583, 66 Montg.Co. Law Rep. 183 (1950); Smith v. Smith, 14 Pa.Dist. & Co.R. 466 (1930); Swaney v. Cabot, 23 Fay.L.J. 175 (1960).

The happenstance that the Pennsylvania couple in their Pennsylvania machine became involved in a two-car collision at a New Jersey roads intersection near the Pennsylvania line does not automatically call for New Jersey law to not only govern that state's various rules of the road but also whether this plaintiff under the facts has the right to sue her husband for his claimed negligence in driving her automobile in which she was riding. Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967), a late and the leading New Jersey Supreme Court decision on this type of litigation strongly ruled that in such factual problem the law of the place is not "* * * [to] be applied mechanically, but that courts should give attention to other factors which are relevant to the choice of law process." (P. 229, 229 A.2d p. 626). I think it obvious that Pennsylvania in this instance has the overwhelming relationship with the Pennsylvania parties to the accident, particularly with regard to their then marital status. I must conclude that the part of the district court order denying appellant's motion to dismiss the complaint as to him should be reversed and appellant's motion to dismiss the complaint as to him allowed.